UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MEDFIRST CONSULTING
HEALTHCARE STAFFING, LLC,

Plaintiff,

v. Case No: 2:24-cv-01170-JLB-NPM

REGINA WASHINGTON and MELBA
BEARDEN,

Defendants.
_______________________________/

**ORDER**

Before the Court is Plaintiff MedFirst Consulting Healthcare Staffing, LLC's Complaint, bringing an action to compel arbitration and breach of contract. (Doc. 1). Defendants Regina Washington and Melba Bearden move to dismiss or, alternatively, stay the action pending resolution of a separate lawsuit. (Doc. 14). Intervenor-Plaintiffs Deloitte, Inc. and Hamilton Health Sciences Corporation ("HHSC") move to intervene. (Doc. 22). And Defendants move to disqualify counsel for MedFirst. (Doc. 59). Upon careful review, the Court **DENIES** Defendants' motion to dismiss and motion to disqualify and **GRANTS** the Intervenor-Plaintiffs' motion to intervene.

**BACKGROUND**

Defendants independently contracted to work for Plaintiff on a project in Ontario, Canada. (Doc. 1 at 1–2). Each Defendant signed a separate contractor Agreement with Plaintiff. (Doc. 1-2; Doc. 1-3). The Agreements contain an

arbitration clause providing:

> **VIII. Dispute Resolution/Arbitration Agreement.**
>
> **a) Agreement and Disputes.** The parties agree that any claim or dispute arising out of, or related to, this Agreement or any aspect thereof . . . shall be adjudicated by submitting such Claim(s) to mandatory, binding arbitration before the American Arbitration Association.
>
> **b) Arbitration Venue and Rules.** The parties agree that the arbitration process will be conducted in Lee County, Florida . . . .

(Doc. 1-2 at 6; Doc. 1-3 at 6). The Agreements also prohibit class actions and collective proceedings. (Doc. 1-2 at 6–7; Doc. 1-3 at 6–7).

Defendants initiated a class action lawsuit against MedFirst, Deloitte LLP, and HHSC in Ontario, Canada ("the Canadian action"). (Doc. 1-4). Defendants brought the Canadian action pursuant to the Employment Standards Act ("ESA"), alleging that MedFirst violated the ESA and breached its contractual duties to the class members. (*Id.* at 4–9). Specifically, Defendants allege in the Canadian action that MedFirst failed to advise the members of their entitlement to overtime pay for hours worked in excess of 44 hours per week, required overtime work without compensation, and failed to accurately monitor and record hours worked, among other things. (*Id.* at 5–7). The class members seek $7.5 million in damages for breach of contract and $5 million in punitive damages. (*Id.* 7–8).

MedFirst filed its Complaint and petition in this Court for breach of contract and to compel arbitration. (Doc. 1). Defendants move to dismiss, arguing that the Court lacks jurisdiction, and MedFirst responded in opposition. (Docs. 14, 21). The Court ordered supplemental jurisdictional briefing (Doc. 44), and the parties each

filed additional briefs. (Docs. 46, 47). Deloitte, Inc. and HHSC, using the same counsel as MedFirst, move to intervene. (Doc. 22). Defendants responded in opposition (Doc. 27), Deloitte and HHSC replied (Doc. 30), and Defendants filed a sur-reply (Doc. 33). Further, Defendants move to disqualify counsel for MedFirst. (Doc. 59), and MedFirst responded in opposition. (Doc. 62).

## DISCUSSION

### I. Motion to Dismiss or, Alternatively, Stay

In considering Defendants' argument that this Court must either dismiss or stay this action, the Court evaluates the applicability of sections 3 and 4 of the Federal Arbitration Act ("FAA"). Additionally, the Court must determine whether it has subject matter and personal jurisdiction over this matter and whether venue is proper in this Court.

#### A. Section 4 of the FAA is Applicable

MedFirst brings its Complaint to compel arbitration under section 4 of the FAA. (Doc. 1 at 2). Defendants move to dismiss or stay this action on the grounds that section 3 is applicable here. (Doc. 14).

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Relying on the statute's language that "the court in which such suit is pending" shall stay the action pending arbitration, Defendants argue that MedFirst's motion to compel arbitration should have been brought in the Canadian action. (Doc. 14 at 4). But this ignores that the full text of section 3, confining the "the court in which such suit is pending" to being a suit "brought in any of the courts of the United States." 9 U.S.C. § 3. It is undisputed that the court in which the suit is pending here is not a court of the United States—it is a court in Ontario, Canada. Thus, the Court agrees with Plaintiff that section 4 is instead appropriate here.

Section 4 of the FAA provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. In other words, where one party to an arbitration agreement refuses to arbitrate, the party seeking to enforce the arbitration agreement may petition a district court to compel such arbitration if that district court would otherwise have federal question or diversity jurisdiction over the underlying action.

To determine whether federal question or diversity jurisdiction exists, "a federal court should determine its jurisdiction by 'looking through' a § 4 petition to the parties' underlying substantive controversy." *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009). Put simply, "the district court should assume the absence of the

arbitration agreement and determine whether it would have jurisdiction under title 28 without it." *Id.* (citation and internal quotation marks omitted). Accordingly, "a party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court." *Id.* at 66. In *Vaden*, the Supreme Court held that the parties' actual controversy was a state-court suit that "did not 'arise under' federal law" or "qualify under any other head of federal-court jurisdiction." *Id.* As a result, the district court did not have jurisdiction over the petition to compel arbitration under 9 U.S.C. § 4. *Id.*

**B. The Court has Diversity Jurisdiction Over this Action**

The question before this Court now, then, is whether the actual controversy between the parties provides a basis for subject-matter jurisdiction under Title 28. It does. The parties agree that federal question jurisdiction does not exist. (*See* Doc. 46 at 6; Doc. 47 at 4–5). Indeed, the Canadian action deals only with Canadian law. (Doc. 1-4). The parties, however, dispute whether diversity jurisdiction exists.

Defendants argue that *Vaden* evaluated only federal question jurisdiction and, therefore, a petition to compel arbitration under section 4 cannot be based on diversity jurisdiction. (Doc. 47 at 3–4). But the underlying argument belies the plain and unambiguous text of section 4, which permits a petition to be brought where jurisdiction would otherwise exist "under title 28." 9 U.S.C. § 4. Because Title 28 encompasses diversity jurisdiction, any argument to the contrary falls short. *See* 28 U.S.C. § 1332. To be sure, the *Vaden* Court explicitly held that the

actual controversy at issue there did not invoke federal question jurisdiction "nor did it qualify ***under any other head of federal-court jurisdiction***." *Vaden*, 556 U.S. 49 at 66 (emphasis added). Eleventh Circuit precedent confirms that a petition to compel arbitration under section 4 may be brought in federal court under either federal question or diversity jurisdiction. *Household Bank v. JFS Grp.*, 320 F.3d 1249, 1253 (11th Cir. 2003) (quoting *Tamiami Partners v. Miccosukee Tribe of Indians of Fla.*, 177 F.3d 1212, 1222 (11th Cir. 1999) ("[T]he Federal Arbitration Act alone is insufficient to confer federal jurisdiction over disputes involving arbitration agreements, and that an independent basis of jurisdiction—such as diversity or a federal question—is required.")); *see also First Franklin Fin. Corp. v. McCollum*, 144 F.3d 1362, 1363 (11th Cir. 1998) (holding that the underlying state court action was removable on the basis of diversity jurisdiction pursuant to sections 3 and 4 of the FAA).

MedFirst contends that this Court has diversity jurisdiction because it must look through to the underlying class action and find that it complies with the requirements of the Class Action Fairness Act ("CAFA"). (Doc. 46 at 7–10). In so arguing, MedFirst submits that the Court should look to the present action when evaluating diversity of citizenship and to the underlying action when determining the amount in controversy. (*Id.* at 8, 10) (citing *Hermes of Paris, Inc. v. Swain*, 867 F.3d 321, 324 (2d Cir. 2017) ("[A] court assessing its jurisdiction over an FAA petition is to look[ ] only to the citizenship of the parties in the action before it—that is, the parties to the petition to compel." (citation and internal quotation marks

omitted) (second alteration in original)); *Kivisto v. Kulmala*, No. 11CV81135RYSKAMPVITU, 2012 WL 13019213, at *2 (S.D. Fla. Mar. 16, 2012) ("The amount in controversy in an action to compel arbitration under the FAA is determined by the amount at stake in the underlying action to be arbitrated . . . .").

The Eleventh Circuit addressed this issue in *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016), holding that "[b]ecause the FAA does not contain its own statutory grant of jurisdiction and does not create federal question jurisdiction, the district court must have diversity jurisdiction over the original parties to entertain prearbitration proceedings." The Eleventh Circuit also relied on the amount in controversy in the underlying state court action in evaluating whether the amount in controversy was satisfied. *Id.*; *see Cellco P'ship v. Lasher*, No. 8:23-CV-1242-VMC-AAS, 2023 WL 7000963, at *3 (M.D. Fla. Oct. 24, 2023) (quoting *Del Webb Communities, Inc. v. Carlson*, 817 F.3d 867, 871 (4th Cir. 2016) ("Jurisdiction under CAFA . . . depends on the underlying substantive controversy — here, the putative class action [pending in arbitration].") (alteration in original)).

CAFA requires: "(1) an amount in controversy requirement of an aggregate of $5,000,000 in claims; (2) a diversity requirement of minimal diversity; (3) a numerosity requirement that the action involve the monetary claims of 100 or more plaintiffs; and (4) a commonality requirement that the plaintiffs' claims involve common questions of law or fact." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1202–03 (11th Cir. 2007); 28 U.S.C. § 1332(d). Only the diversity of citizenship and the amount in controversy are at issue here.

Diversity of citizenship is satisfied. MedFirst is an Alabama limited liability company whose members reside in Alabama, and Defendants are residents of Georgia and Ohio. (Doc. 1 at ¶¶ 1–3). Further, Deloitte and HHSC, parties to the Canadian action, are Canadian companies in Ontario. (Doc. 1-4 at ¶¶ 19–20).

Looking to the underlying action, the Court finds that the amount in controversy is likewise satisfied. The Canadian action, brought on behalf of "about 300 persons," seeks $5 million in punitive damages and $7.5 million in damages for breach of contract. (Doc. 47 at 3; Doc. 1-4 at 7–8). Because punitive damages are calculated pro rata for purposes of establishing the amount in controversy, the Court notes that the amount recoverable for the Defendants here is an estimated $16,666 each. *Cohen v. Off. Depot, Inc.*, 204 F.3d 1069, 1073–76 (11th Cir. 2000) (holding that punitive damages are divided equally among the class members to calculate amount in controversy). The parties agree on this pro rata amount. (Doc. 46 at 11; Doc. 47 at 3). The $7.5 million sought in damages, however, is taken in the aggregate and therefore satisfies the amount in controversy. Accordingly, this Court has diversity jurisdiction over this matter.

### C. Venue is Proper in this Court

Next, the parties dispute whether venue is proper in the Middle District of Florida. (Doc. 46 at 13–14; Doc. 47 at 6–7). "It is well-settled law that parties to a contract may bargain in advance to select the forum in which their disputes will be adjudicated." *Upofloor Americas, Inc. v. S Squared Sustainable Surfaces, LLC*, No. 616CV179ORL37DCI, 2016 WL 5933422, at *7 (M.D. Fla. Oct. 12, 2016) (citing

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–15 (1972) ("[T]he forum clause should control absent a strong showing that it should be set aside.")); *see Lindberg v. Universal Life Ins. Co.*, No. 8:24-CV-2602-CEH-SPF, 2025 WL 3236520, at *5 (M.D. Fla. Nov. 20, 2025) (finding that "the U.S. District Court for the District of Puerto Rico is the correct venue for Lindberg to compel arbitration since Puerto Rico is the situs of the forum selection clause."). Because the arbitration agreements here included a choice-of-forum provision providing that any arbitration take place in Lee County, Florida, venue is proper in the Fort Myers Division of the Middle District of Florida, which is located in Lee County. (Doc. 1-2 at 6; Doc. 1-3 at 6).

**D. The Court Enjoys Personal Jurisdiction Over the Parties**

Further, although the parties do not contest it, the Court finds that it has personal jurisdiction over this matter. "A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). This requires that Florida's long-arm statute provide jurisdiction and whether this Court's exercise of that jurisdiction comports with due process. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 807 (11th Cir. 2010).

Florida's long-arm statute confers personal jurisdiction where parties to a commercial contract agree to such jurisdiction. *Jetbroadband WV, LLC v. MasTec N. Am., Inc.*, 13 So. 3d 159, 160 (Fla. 3d DCA 2009). The statute provides that a person, whether a resident of the state or not, who enters into a contract that

complies with section 685.102 submits themselves to the jurisdiction of the courts of this state for any cause of action arising from that contract. Fla. Stat. § 48.193. And section 685.102 confers jurisdiction over a person where the action arises out of a contract "for which a choice of law of this state . . . has been made pursuant to s. 685.101," and that contains a provision where the parties located outside of the state agree to submit to its jurisdiction. *See* Fla. Stat. §§ 685.101–102.

To satisfy sections 685.101 and 102, the contract must:

> (1) include a choice of law provision designating Florida Law as the governing law, (2) include a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida, (3) involve consideration of not less than $250,000, (4) not violate the United States Constitution, and (5) either bear a substantial or reasonable relation to Florida or have at least one of the parties be a resident of Florida or incorporated under its laws.

*Jetbroadband*, 13 So. 3d at 162. Here, the agreements between Defendants and MedFirst include a choice-of-law provision specifying that Florida law applies. (Doc. 1-3 at 7; Doc. 1-4 at 7). As previously determined, the consideration is neither less than $250,000, nor does either party allege that the agreement violates the Constitution. And there is a substantial or reasonable relation to Florida, where the parties agree to a forum-selection clause in the state by contract. *Jetbroadband*, 13 So. 3d at 162–63 ("The language of the statute is clear. By promulgating sections 685.101–102, the Legislature allowed contracting parties to dispense with the more restrictive Florida long-arm limitations."); *Square Ring Inc. v. Troyanovsky*, No. 3:16-CV-641-MCR-GRJ, 2018 WL 7350674, at *13 (N.D. Fla. Feb. 12, 2018) (finding Florida's long-arm statute minimum contacts requirement is met where the parties

contract includes a forum selection clause for the state); *Steller Grp., Inc. v. Mid-Ohio Mech., Inc.*, No. 3:03CV1057J20HTS, 2004 WL 5685570, at *2 (M.D. Fla. Jan. 28, 2004) (same).

Because "[t]he enforcement of an agreement conferring jurisdiction does not offend due process where the provision is freely negotiated and not unreasonable or unjust," the due process analysis is unnecessary where the parties have consented to suit in a forum. *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 921 (11th Cir. 1989) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985)). Accordingly, the requirements for personal jurisdiction are satisfied.[1]

## II. Motion to Intervene

Deloitte and HHSC move to intervene in this action as a matter of right pursuant to Federal Rule of Civil Procedure 24(a) or, alternatively, for permissive intervention under Rule 24(b). (Doc. 22).

Rule 24(a)(2) permits intervention as a matter of right where the intervening party, "[o]n timely motion, . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Courts have interpreted this rule to require a party seeking intervention as a matter of right to

[1] Florida's choice of law statute exempts contracts dealing with labor or employment. Fla. Stat. § 685.101(2)(b). Because the agreements at issue here established that the Defendants were independent contractors, this provision is inapplicable. (Doc. 1-3; Doc. 1-4); *see Gammons v. Royal Caribbean Cruises Ltd.*, 558 F. Supp. 3d 1220, 1226 (S.D. Fla. 2021) ("The agreement unequivocally establishes the parties' intent in forming their relationship [as independent contractors].").

show: "(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." *Stone v. First Union Corp.*, 371 F.3d 1305, 1308–09 (11th Cir. 2004) (quoting *Worlds v. Dep't of Health & Rehab. Servs., State of Fla.*, 929 F.2d 591, 593 (11th Cir. 1991)). Here, the second, third, and fourth elements are contested. (Doc. 27 at 6).

**A. Interest Relating to this Action**

Deloitte and HHSC contend that they have an interest relating to this action because they, like MedFirst, seek to compel arbitration of Defendants' claims in the Canadian action. (Doc. 22 at 5–6). Specifically, they argue that, although Florida law generally does not allow non-signatories to an arbitration agreement to compel a signatory to submit to arbitration, there is an exception "when the signatory to the contract containing the arbitration clause alleges substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories." (*Id.*) (quoting *Lash & Goldberg LLP v. Clarke*, 88 So. 3d 426, 427–28 (Fla. 4th DCA 2012) (holding that a non-signatory could compel arbitration where the "complaint generally ties those defendants to the others who were parties to the arbitration agreement")). Thus, Deloitte and HHSC argue that Defendants' claims against MedFirst, Deloitte, and HHSC constitute substantially interdependent conduct.

Indeed, in the Canadian action, Washington and Bearden allege that MedFirst is liable to the class members for unpaid wages, for which "Deloitte and HHSC are jointly and severally liable . . . ." (Doc. 1-4 at ¶¶ 10, 45). The Complaint further alleges that "[t]he control over Class Members' terms and conditions of employment exerted by MedFirst and pleaded above was at Deloitte and/or HHSC's direction." (*Id.* at ¶ 26). The Complaint's claim for unjust enrichment likewise links the parties together, alleging that "Deloitte and HHSC have been unjustly enriched as a result of receiving the benefit of the unpaid overtime hours and public holidays . . . ." (*Id.* at ¶ 46).

Given these circumstances, the Court agrees that Defendants' claims against MedFirst are significantly intertwined with those of Deloitte and HHSC and, therefore, Deloitte and HHSC have a legally protectable interest in the transaction at issue in this action.

**B. Impairment of Interest**

In evaluating whether disposition of the action may impede or impair the interventor's ability to protect its interest, courts have found that "the potential for a negative stare decisis effect '*may* supply that practical disadvantage which warrants intervention of right.'" *Stone*, 371 F.3d at 1309–10 (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989)). Though "potential for negative stare decisis effects does not automatically grant plaintiffs the right to intervene," it does so where "the practical impairment the plaintiffs may face . . . is significant." *Id.* at 1310 (holding that there was potential for significant impairment where the

court's finding could influence later suits and, although that finding would not be binding on other district courts, its persuasive effect warranted intervention).

Here, Deloitte and HHSC seek to enforce an arbitration agreement as non-signatories to an agreement between MedFirst and Defendants. The Court finds that this Court's decision on the scope and enforceability of that arbitration agreement could potentially have a significant negative effect on Deloitte and HHSC, placing both at a practical disadvantage.

### C. Adequacy of Representation

To intervene as a matter of right, Deloitte and HHSC must also show that MedFirst does not adequately represent their interests. Fed. R. Civ. P. 24(a)(2). Though "[t]here is a presumption of adequate representation where an existing party seeks the same objectives as the interveners . . . . This presumption is weak and can be overcome if the plaintiffs present some evidence to the contrary." *Stone*, 371 F. 3d at 1311 (citing *Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999)). Indeed, "[i]nterveners need only show that the current plaintiff's representation may be inadequate" and "the burden for making such a showing is minimal." *Id.* (internal quotation marks omitted). "Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).

Deloitte and HHSC argue that MedFirst does not adequately represent their

interests because, although their overall objective is similar in that they all seek to enforce the arbitration agreement, MedFirst may not protect Deloitte and HHSC's interests in litigation. Certainly, MedFirst is interested only in enforcing arbitration between itself and Defendants—it is not concerned with the scope of the agreement as it relates to Deloitte and HHSC. For example, Deloitte and HHSC may seek to litigate the issue using both different legal arguments and a broader scope. Therefore, Deloitte and HHS have satisfied the fourth element for intervention as a matter of right. *See In re Shchegoleva*, No. 25-CV-23858, 2026 WL 81771, at *5 (S.D. Fla. Jan. 12, 2026) ("[A]lignment on a broad 'litigation position' does not compel a finding of adequate representation where the intervenor's interests and practical stakes are different in kind and degree." (quoting *Huff v. Comm'r of IRS*, 743 F.3d 790, 800 (11th Cir. 2014))).

Accordingly, Deloitte and HHSC's Motion to Intervene is **GRANTED**.

## III. Disqualification of Counsel

Defendants move to disqualify counsel for Plaintiff MedFirst and Intervenor-Plaintiffs Deloitte and HHSC, Reed Russell and Wesley Thorp, on the basis that the concurrent representation is adverse to the interests of the parties. (Doc. 59). As an initial matter, the Court presumes (but does not decide) that Defendants have standing to make this motion seeking such an extraordinary remedy. The Court need not delve into the standing issue because, even if Defendants had standing, their motion would still fail.

Florida Rule of Professional Conduct 4–1.7 provides[2]:

> **(a) Representing Adverse Interests.** Except as provided in subdivision (b), a lawyer must not represent a client if:
>
> (1) the representation of 1 client will be directly adverse to another client; or
> (2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> **(b) Informed Consent.** Notwithstanding the existence of a conflict of interest under subdivision (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing.
>
> **(c) Explanation to Clients.** When representation of multiple clients in a single matter is undertaken, the consultation must include an explanation of the implications of the common representation and the advantages and risks involved.

"The disqualification of counsel is an extraordinary remedy." *SuperCooler Techs., Inc. v. Coca Cola Co.*, 682 F. Supp. 3d 1071, 1076 (M.D. Fla. 2023) (citation omitted). Generally, "[t]he party moving to disqualify counsel bears the burden of proving the grounds for disqualification." *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003). This is "[b]ecause a party is presumptively entitled to the counsel

[2] Local Rule 2.01(e) requires all members of this Court's bar, and all attorneys granted special admission to appear, to be familiar with and be bound by the Florida Rules of Professional Conduct. *See* M.D. Fla. Local Rule 2.01(e).

of his choice" and such "right may be overridden only if 'compelling reasons' exist." *Id.* However, "[w]hen the representation is concurrent . . . adverse representation is *prima facie* improper." *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1337 (S.D. Fla. 2001); *Arnett v. Mid-Cont'l Cas. Co.*, No. 8:08-CV-2373-T-27EAJ, 2009 WL 10670499, at *2 (M.D. Fla. Nov. 19, 2009) ("When the representation of two clients with adverse interests is concurrent, the representation is prima facie improper."); *BioMatrix Specialty Pharmacy, LLC v. Horizon Healthcare Servs., Inc.*, No. 18-61680-CIV, 2018 WL 6812842, at *6 (S.D. Fla. Dec. 27, 2018) (same). Still, "[a] disqualification order 'is a harsh sanction, often working substantial hardship on the client' and should therefore 'be resorted to sparingly.'" *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006) (quoting *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982)). And a motion to disqualify brought by opposing counsel "should be viewed with caution . . . for it can be misused as a technique of harassment." Fla. Rules of Prof'l Conduct, R. 4-1.7, cmt. 7.

Thus, the question before the Court is whether Mr. Russell and Mr. Thorp's representation of Deloitte and HHSC is adverse to their representation of MedFirst. Defendants argue that Mr. Russell and Mr. Thorp's representation of MedFirst and Deloitte and HHSC is adverse for the following reasons: Deloitte and HHSC's defense in the Canadian action to Washington and Bearden's wage and hour claims will presumably hinge the argument that they are not liable as joint employers, while MedFirst will argue that the opposite; MedFirst may wish to reach an early

settlement agreement because of "publicly documented financial difficulties;" Deloitte and HHSC are non-signatories to the arbitration agreement, while MedFirst is a signatory; assuming arbitration is compelled, it would proceed in Florida, which may be inconvenient for Deloitte and HHSC. (Doc. 59 at 2).

These are not adverse interests. The defenses relevant in the Canadian action involving employment compensation disputes are not applicable in this action, which concerns an arbitration agreement. And Defendants' concerns about MedFirst's financial difficulties possibly affecting this action are speculative and irrelevant, as is the chance that Florida may be an inconvenient forum for Deloitte and HHSC—both of which moved to intervene in this action voluntarily. To be sure, Defendants cannot point to any authority supporting these as adverse interests, nor does the Court find such adversity.

Further, because MedFirst, Deloitte, and HHSC seek to compel arbitration, their interests are not adverse, even though they may rely on different legal theories. Even so, Defendants argue that concurrent representation is improper here, relying on *Arnett*, 2009 WL 10670499, at *3, which found that concurrent representation was improper where the parties' interests were not identical and was concerned that "[i]f the appeal is successful and the case is retried, Arnett will raise different legal arguments than Rudy Brown and the law firm could be faced with the situation of having to cross examine Rudy Brown as an adverse witness." That is not a concern in this action. Here, the parties share the same objective: to compel arbitration. To do so, the parties may rely on different legal principles (e.g.,

MedFirst is a signatory, while Deloitte and HHSC are not and, therefore, may need to argue that some exception applies). But the risk of *adverse* arguments—if any—is minimal.[3]

Defendants argue that, at minimum, Mr. Russell and Mr. Thorp must show that they have obtained informed consent from the parties. (Doc. 59 at 8). Because the Court does not find any adverse interests between MedFirst and Deloitte and HHSC, however, the burden of demonstrating disqualification of counsel remains on the Defendants. *See In re BellSouth Corp.*, 334 F.3d at 961; *Gen. Cigar Holdings*, 144 F. Supp. 2d at 1337. They have not carried their burden of demonstrating an adverse interest. Therefore, the burden to produce evidence of informed consent does not shift to Mr. Russell and Mr. Thorp. *See, e.g.*, *Arnett*, 2009 WL 10670499, at *3 ("Having found that the law firm's concurrent representation presents at a minimum, a serious potential for a conflict of interest, the court must determine whether there was informed consent to the simultaneous, dual representation.").

Accordingly, Defendants' Motion to Disqualify Counsel for MedFirst (Doc. 59) is **DENIED**.

## CONCLUSION

It is **ORDERED**:

1. Defendants' Motion to Dismiss (Doc. 14) is **DENIED**.
2. Defendants' Renewed Motion to Disqualify Counsel for MedFirst (Doc. 59) is

[3] Notably, in their Response in opposition to Deloitte and HHSC's Motion to Intervene, Defendants argue that Deloitte and HHSC share a "complete alignment of their objectives with [MedFirst]." (Doc. 27 at 9).

**DENIED**.

3. Intervenor-Plaintiffs' Motion to Intervene (Doc. 22) is **GRANTED**.

**ORDERED** in Fort Myers, Florida, on September 21, 2026.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE